UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JONATHAN VILMA**, | * | CIVIL ACTION NO. 12-cv-1283 |
| | * | c/w 12- 1718 and 12-1744 |
| Plaintiff, | * | |
| | * | Pertains to 12-1718 and 12-1744 |
| Versus | * | |
| | * | SECTION C, DIVISION 3 |
| **ROGER GOODELL**, | * | |
| | * | JUDGE HELEN G. BERRIGAN |
| Defendant. | * | |
| | * | MAGISTRATE JUDGE DANIEL E. KNOWLES, III |
| ******************************* | | |

### NFL'S RESPONSE IN OPPOSITION TO MOTIONS TO VACATE

The Court must deny the Motions To Vacate and should grant the NFL's pending Motion To Dismiss (Doc No. 64). The July 3, 2012 arbitral decision that these actions seek to set aside has already been vacated, and, as the Fifth Circuit has made clear, it is improper for a court to entertain a request to vacate an arbitration award that has not issued.

Even if the Court could properly consider the merits of the requests to vacate yet-to-be-issued decisions, there would be no basis for vacatur. In the CBA, the parties expressly agreed that an appeal to the Commissioner or his appointed designee would be the "full, final and complete disposition of the dispute." The request to vacate on the asserted ground of "evident bias" misstates the applicable law and wholly ignores the dispute resolution mechanism provided for in the CBA, in which the parties agreed that the Commissioner could preside over any conduct detrimental appeal "at his discretion." The request to vacate for anticipated procedural complaints also misstates the applicable law and facts runs directly counter to the well-established rule that procedural issues are for the arbitrator, not the court, to decide. And the complaint about Mr. Fujita's discipline is meritless and not properly before the Court.

The Court should deny the Motions to Vacate and should dismiss these actions.

## I. The Court Must Deny These Motions and Dismiss These Actions.

The Fifth Circuit has clearly held that a district court lacks authority to consider a challenge to an arbitration award on grounds of bias or alleged procedural deficiencies before that arbitration award has issued. *See Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 490–92 (5th Cir. 2002) (reversing district court decision striking an arbitrator from presiding over a to-be-conducted arbitration). In particular, "it is well-established that prior to the issuance of an award, a court may not make inquiry into an arbitrator's capacity to serve based on a challenge that a given arbitrator is biased." *Id.* at 490.

The Court has ordered expedited briefing on motions to vacate an arbitration award that has not issued, presumably to enable the Court to rule immediately after an appeal decision issues. The NFL respectfully submits that this is not appropriate. The players brought suits or actions seeking to set aside Commissioner Goodell's appeal decision of July 3, 2012. (*See* NFLPA Appl., ¶ 7; Vilma Am. Compl. ¶ 1.) That decision was vacated by the CBA Appeal Panel. (NFLPA Ex. C.) There is no final arbitration award; the players have not exhausted their CBA remedies with respect to the discipline issued in October. The only appropriate action in such circumstances is dismissal of the actions. *See, e.g.*, *Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 977 (5th Cir. 1986) ("If the arbitration and grievance procedure is the exclusive and final remedy for breach of the collective bargaining agreement, the employee *may not sue* his employer under § 301 *until* he has exhausted the procedure" (emphasis added).).

If the players believe that they are aggrieved *after* they have exhausted their appeals, then they may seek judicial relief under Section 301. But we are not aware of any basis under which the Court can entertain a motion to vacate an award that has not yet issued.

**II.    Plaintiffs' "Evident Bias" Argument Lacks Merit.**

Plaintiffs' "evident bias" arguments are an improper and misguided effort to alter the bargain that their Union struck in the CBA. These challenges: (a) ignore the governing CBA provisions; (b) misstate the law on "evident partiality"; and (c) materially misrepresent the facts by failing to account for the totality of the circumstances.

**A. CBA.** The CBA expressly provides that an appeal to the Commissioner is the sole and exclusive remedy available to a player or the NFLPA when the Commissioner suspends a player for conduct detrimental. (CBA Art. 46, § 1(a).) The CBA further provides that the Commissioner "at his discretion" may preside as the hearing officer for such an appeal. (*Id.*, § 2(a).) "When the parties have agreed upon a particular method of dispute resolution, it should generally be presumed fair." *Sheet Metal Workers Int'l Ass'n, Local No. 162 v. Jason Mfg., Inc.*, 900 F.2d 1392, 1398 (9th Cir. 1990) (quotation and citation omitted). "By signing the [CBA], [the NFLPA] effectively consented to the [Commissioner presiding, at his discretion, over a conduct detrimental appeal] wherever and whenever the next hearing was to convene." *Id.*; *see also Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 427–28 (9th Cir. 1996) (rejecting attempt to vacate arbitration award when complaining party "knew of the arbitrators' relationship with [the opposing party] when he agreed to the arbitration procedure").

"When they contract for arbitration, parties should be aware that they get what they bargain for." *Pfeifle v. Chemoil Corp.*, 73 Fed. Appx. 720, 723 (5th Cir. 2003). The pending vacatur motions ask this Court to grant something that the NFLPA did not secure in bargaining: The appointment of someone other than the Commissioner or a hearing officer whom the Commissioner appoints (after consultation with the NFLPA Executive Director) to resolve an appeal of a conduct detrimental suspension. That request turns the CBA (and the law) on its

head. It is the *Commissioner's* "judgment and all that it connotes that was bargained for." *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 566–67 (1960). In the CBA, the parties agreed to "trust in [the Commissioner's] personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960); *see Teamsters, Chauffers, Warehousemen, Helpers & Food Processors, Local Union 657 v. Stanley Structures, Inc.*, 735 F.2d 903, 905 (5th Cir. 1984) ("The parties bargained for the [Commissioner]'s decision and agreed to be bound by it.").

  **B. Applicable legal standard.** "Unlike a judge, who can be disqualified in any proceeding in which his impartiality might reasonably be questioned …, an arbitrator is disqualified only when a reasonable person, considering all of the circumstances, would *have* to conclude that an arbitrator was partial to one side." *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Be Sanayi, A.S.*, 492 F.3d 132, 137 (2d Cir. 2007) (internal quotations and citations omitted, emphasis in original). *Accord Householder Group v. Caughran*, 354 Fed. App'x 848, 852 (5th Cir. Nov. 20, 2009) (citing same standard, recognizing that this is an "onerous burden"). The NFLPA's Motion, which relies on cases addressing the "appearance of partiality" standard applicable to federal judges (*see* NFLPA Mem. at 16 n.19), simply urges the wrong standard.

  Moreover, when, as in this case, "an agreement entitles the parties to select interested arbitrators"—something the CBA expressly does with respect to Commissioner discipline for conduct detrimental—"'evident partiality' cannot serve as a basis for vacating an award … absent a showing of prejudice." *Winfrey v. Simmons Foods, Inc.*, 495 F.3d 549, 551 (8th Cir. 2007). By its terms and design, the CBA contemplates that the Commissioner must have arrived at an initial conclusion (in issuing the discipline) *before* that appeal. The NFLPA may have second-thoughts about this agreement (which has served the sport well for the decades that it has been

part of NFL Collective Bargaining Agreements), but they cannot call it "prejudice" and ask this Court to rewrite it.

"[T]he parties to an arbitration choose their method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen." *Williams v. NFL*, 582 F.3d 863, 885 (8th Cir. 2009). As in the NFL CBA, "private parties often select arbitrators precisely because they know something about the controversy. Arbitration need not follow the pattern of jury trials, in which a fact finder's ignorance is a prime desideratum. Nothing in the parties' contract requires arbitrators to arrive with empty heads." *Trustmark Ins. Co. v. John Hancock Life Ins. Co.*, 631 F.3d 869, 873–74 (7th Cir. 2011). Indeed, arbitrators "often have interests and relationships that overlap with the matter they are considering." *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 173 (2d Cir. 1984). In this CBA, by design, that interest, relationship and overlap could not be any more direct with respect to conduct detrimental appeals.

**C. Facts.** Plaintiffs' selective excerpts of snippets from newspaper articles do not constitute "*all* of the circumstances." When *all* of the circumstances are considered, it is clear that the reasonable observer would not *have* to conclude that, if the October suspensions are upheld in whole or in part on appeal, that the outcome is due to "bias." That is particularly true in light of the fact that the NFLPA agreed that the Commissioner, at his discretion, would hear appeals regarding discipline that the Commissioner had determined he should impose.

Plaintiffs allege that they will be entitled to vacatur of any adverse appeal decision because "the Commissioner commenced a public relations campaign against the Players for their alleged role in the purported 'bounty' scheme." (NFLPA Mem. at 5.) This argument ignores the fact that the Commissioner's obligations, over which the NFLPA also bargained (and to which the NFLPA agreed) include ensuring and preserving not only the integrity of, but also "*public*

*confidence*" in, the game of professional football.[1] The NFLPA knew about that obligation when it entered into the CBA and agreed that "the Commissioner" would, at his discretion, hear conduct detrimental appeals. Accordingly, the Commissioner's explanations to the public as to why he had decided to discipline the Saints, Saints coaches and executives, or the players—or why their respective conduct was detrimental to professional football—cannot provide a basis to assert bias sufficient to vacate an appeal decision.

Plaintiffs also ignore the fact that the allegedly "prejudging" statements were made after NFL Security reported on its findings, and almost all were made after Commissioner Goodell issued his notices of discipline to the Saints and the current and former Saints coaches found to have engaged in conduct detrimental. As Judge Zainey has observed, "[a]n arbitrator is not precluded from developing views regarding the merits of a dispute early in the proceedings, and an award will not be vacated because he expresses those views." *Adams v. Secs. Am., Inc.*, 2006 WL 2631863, at *9 (E.D. La. Sept. 12, 2006). The law would not require a federal *judge* in a *criminal* trial to recuse on bias allegations simply because the judge had presided over a prior proceeding involving a related defendant or co-conspirator. *See, e.g.*, *Wilkerson v. U.S.*, 591 F.2d 1046, 1047 (5th Cir. 1979); *U.S. v. Partin*, 552 F.2d 621, 636–37 (5th Cir. 1977). It cannot require the *arbiter* designated *by the CBA* to recuse himself in a proceeding *expressly called for* by that CBA.

---

[1] This attack also ignores the fact that Plaintiffs, including Mr. Vilma, his counsel, and the NFLPA, had a "public relations campaign" of their own seeking to discredit the findings of the NFL's investigation. While the Court may question the wisdom of any or all of the public comments made by the League and the Union and players over the course of events, the relevant point for purposes of the bias challenge is that the CBA—unlike the statutes and canons that apply to federal judges—does not prohibit the Commissioner from speaking publicly about the basis for his discipline or the reasons the conduct was detrimental, and certainly not from doing so in response to accusations levied by the Union or its members.

Plaintiffs contend that, because the Commissioner made some comments to the press, the remarks were extrinsic to his role as Commissioner. But, as Judge Zainey has also observed, "An arbitrator's gratuitous remarks about the merits do not indicate any bias." *Id.* (quoting and citing *United Indus. Workers v. Gov't of V.I.*, 987 F.2d 162, 172 (3d Cir. 1993)).[2] Indeed, almost all of the statements about which the NFLPA complains (*see* NFLPA Mem. at 7) were made *after* the Commissioner had issued his May 2 discipline notices to the players, and the rest concern comments applicable to the discipline imposed on the Club and Club personnel.

The articles themselves, read as a whole, also demonstrate that the Commissioner was not "prejudging" the outcome of the *players'* appeals before hearing from the players (who, on the advice of the NFLPA, were refusing to meet with him). Thus, in addition to the statements about which the Plaintiffs complain, the Commissioner *also* said, for example, in response to the question, "Why not announce the punishments for the players along with the punishments for the rest of the Saints organization?": "I would have, but the Players Association wanted some time to investigate this and talk to its own players. I've spoken to well over two dozen players over the past couple of weeks, including players in a leadership position. They take it very seriously. I wanted them to have the opportunity to make a recommendation to me and make sure I've heard from them fully before I make a final decision." (Doc. 94-6, at 2.)

The Commissioner also said, after he had issued his May 2 discipline letters but before he had heard the players appeals, "[s]ure you second guess yourself because that is what an appeals process is for. … You want to hear what the players have to say. … When we get to the appeals

---

[2] Plaintiffs also contend that the Commissioner is biased because they disagree with his procedural rulings during the previous appeals. But "even repeated rulings against one party to the arbitration will not establish bias absent some evidence of improper motivation." *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 545, 550 (N.D. Tex. 2006).

we'll be able to hear from each other." (Doc. 94-7, at 1.) And the Commissioner further noted that "What I've got to do is what is in the best interests of the game and recognize that not everyone is going to agree with your decisions. But be thoughtful, fair and try to reach a conclusion that I think is going to be in the best interests of the game." (*Id.*)

Separately, *all* of the circumstances here include the fact that Plaintiffs do not dispute that the Saints program offered incentives for cart-offs and knockouts, *and* that cart-offs and knockouts were plays in which an opposing player was disabled or injured, at least temporarily. As this Court recognized, cash incentives for cart-offs and knockouts are "bounties." (8/10/12 Hrg. Tr. at 5:16–23 ("[O]ne of the things that was discussed both by Mr. Vilma and Coach Vitt were that bonuses were in fact paid for cart-offs. And cart-offs were when a player was hurt enough to have to leave the field at least for a play or two plays. It seems to me that that, in effect, is a bounty, that a player is being rewarded for a hit to cause enough of an injury that that particular player that's hit has to leave the field.").) Not disputing that this program existed, Plaintiffs should not be heard to complain that an adverse appeal decision would *have* to be due to bias.

*All* of the circumstances here also include the fact that two former Saints coaches, Gregg Williams and Mike Cerullo, have submitted declarations sworn under penalty of perjury attesting to the fact that Mr. Vilma pledged to reward any teammate who knocked Brett Farve out of the 2009 NFC Championship game. (NFLPA Exs. H & I.) Mr. Vilma can *dispute* that allegation at his appeal, but he cannot demonstrate that it would *have* to be the case that an adverse appeal decision relying in whole or in part on that sworn testimony could *only* be the result of bias.

**III.     Plaintiffs' Attack on the Appeal Procedure Is Not a Ground for Vacatur.**

Plaintiffs' request to vacate the yet-to-be-issued appeal decisions on the ground of anticipated procedural objections ignores the fact that "arbitral factfinding is generally not equivalent to judicial factfinding … the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath are often severely limited or unavailable.'" *Gonzalez v. S. Pac. Transp. Co.*, 773 F.2d 637, 643–44 (5th Cir. 1985) (quoting *McDonald v. City of W. Branch*, 466 U.S. 284, 291 (1984)). That is especially true because the CBA-prescribed process here affords the suspended player an opportunity to seek reconsideration, not a *de novo* civil trial.

The NFL recognizes that this Court expressed an opinion that the proceedings at the June 18 appeal hearing "were neither transparent nor fair." But, as the Court also undoubtedly recognizes, "[w]hen an employer and a union contract that all disputes and controversies that may arise between them shall be settled by arbitration, they do not simply substitute an arbiter for a judge. They adopt a different method of dispute resolution. They alter pretrial procedures, the method of trial, the standards for admissibility of evidence, and the method of rendering a decision …." *Teamsters, Chauffeurs, Warehousemen, Helpers & Food Processors, Local Union 657 v. Stanley Structures, Inc.*, 735 F.2d 903, 904 (5th Cir. 1984). In so doing, the parties leave it to the arbitrator—here, the Commissioner or his designee—to decide procedural issues that arise in the appeal process. *See Misco*, 484 U.S. at 40 ("[W]hen the subject matter of a dispute is arbitrable, 'procedural' questions which grow out of the dispute and bear on its final disposition are to be left to the arbitrator."); *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 487 (5th Cir. 2002) ("Challenges to the procedural aspects of arbitration are for the arbitrator to decide.").

Furthermore, in arbitration, "the right to due process does not include the complete set of procedural rights guaranteed by the Federal Rules of Civil Procedure." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 299 (5th Cir. 2004); *see also Forsythe Int'l v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1022 (5th Cir. 1990) ("[A]rbitration resolves disputes without confinement to many of the procedural and evidentiary strictures that protect the integrity of formal trials."). *Accord, e.g.*, Sunshine Min. Co. v. United Steelworkers of Am., AFL-CIO, 823 F.2d 1289, 1295 (9th Cir. 1987) ("A party [to arbitration] does not have an absolute right to cross-examination."). Moreover, here, as the NFL's Non-Injury Grievance Arbitrator has already recognized, the procedures applicable to conduct detrimental appeals are different from those for other CBA grievances. (*See* NFL Ex. FF, at 13 n.3.[3]) And Plaintiffs have cited no authority for the proposition that the NFL was required to produce the entirety of its protected work product prepared during the course of the investigation.

The question, therefore, is not whether this Court would have applied different procedures if the Court, and not an appeal to the Commissioner, was the bargained-for forum. Rather, the question is whether the players will be deprived of the opportunity to present an appeal alto-

---

[3] The only federal case that the NFLPA or Mr. Vilma cites in support of its "fundamental unfairness" argument is *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20–21 (2d Cir. 1997). In *Tempo Shain*, the witness at issue, who was unable to attend the hearing due to illness in his family, was "the *only* person who could have [rebutted]" testimony alleging oral misrepresentations made by that absent witness. 120 F.3d at 17–18, 21 (emphasis added). The situation here is fundamentally different: The players can testify in rebuttal to the declarations of Messrs. Williams and Cerullo. Otherwise, the NFLPA and Mr. Vilma rely on inapposite arbitration decisions from *different* industries applying *different* CBAs. *See Williams v. NFL*, 2012 WL 2366636, at \*6 (D. Colo. June 21, 2012) (rejecting argument in an appeal of a suspension under the NFL steroid policy, that the hearing officer had to follow the procedures and decisions of a Major League Baseball arbitrator, "declin[ing] to construe 'major sports leagues' as one industry," observing that "MLB and [the NFL] are governed by different [CBAs]"), *aff'd*, 2012 WL 3642839, at \*3 (10th Cir. Aug. 27, 2012) ("We conclude, for substantially the same reasons announced in the district court's thorough and well-reasoned order granting summary judgment, that Mr. Williams has failed to show … a wholesale abandonment of the collective-bargaining agreement.").

gether. *See, e.g.*, *Teamsters*, 735 F.2d at 906 ("Stanley had notice of the grievances against it and an opportunity to be heard. It thus received industrial due process.").

It is clear that the players have not been deprived—and will not be deprived—of notice of the "charges" against them nor an opportunity to be heard. As Mr. Vilma previously testified in this Court (7/26/12 Hrg. Tr. at 55:6–10), the players had (and will again have), at a minimum, the opportunity to question the NFL Security personnel who conducted the investigation into the Saints program and conduct at issue. They can ask who the investigators interviewed, when they did so, what the interviewees said, and so on. The players can testify themselves. They can call (in person or by telephone) any witness that they wish—and, as demonstrated by the Preliminary Injunction hearing, they are more than capable of calling witnesses. They can submit written declarations (as Mr. Fujita has already done). And, with respect to Coach Williams and Mr. Cerullo, Mr. Vilma's counsel has already argued that the declarations "contradict" one another, and he and the NFLPA are free to present that argument or elaborate upon it at the appeal hearing.[4]

When there is a final decision on the appeal of the Commissioner discipline, this Court must be "exceedingly deferential" to that decision, and must sustain it "whenever possible." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 2011 WL 2565345, at *3 (E.D. La. June 27, 2011) (citing *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 380 (5th Cir. 2004), and *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1218 (5th Cir. 1990)). Under that governing standard, there will not be any basis to set aside the appeal decision for perceived procedural deficiencies.

---

[4]The NFLPA continues to assert (Mem. at 21 n.21) that the players will be deprived of "industrial due process" if the Commissioner does not "mitigat[e] their discipline." But the concept that the Union invokes—as described in the arbitration treatise quoted in its Application (¶ 116)—provides only that when "management … is also at fault in some respect …, the arbitrator *may be persuaded* to reduce or set aside the penalty"—not that an arbitrator *has* to do so.

IV.   **The NFLPA's Complaint About Mr. Fujita's Discipline Is Without Merit and Not Properly Before This Court.**

Mr. Fujita has admitted that he offered players money to be paid if the Saints won a game and that player did something to "earn" the money such as a sack or forced fumble. (NFLPA Ex. J, at 3.) Article IX of the NFL Constitution and Bylaws, as interpreted and applied by the Commissioner, prohibits such offers. (The Commissioner has the authority to interpret and apply the Constitution. *See* NFL Const. Art. 8.5.) And the Constitution and Bylaws expressly provides that violations of Article IX constitutes conduct detrimental. (*Id.* Art. 9.1(A).)

Nonetheless, the NFLPA contends that the Commissioner has misinterpreted or misapplied the Constitution and Bylaws in deciding to discipline Mr. Fujita. If that suspension is upheld on appeal, that complaint would have no merit, but it also is not one for this Court. This is an argument about what the Constitution and Bylaws mean. Under the governing legal standard, this Court cannot substitute its judgment on that issue for that of the arbitrator the parties agreed would preside: the Commissioner or his designated hearing officer. *See MLPBA v. Garvey*, 532 U.S. 504, 509 (2001) ("Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement. … [I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed a serious error does not suffice to overturn his decision" (internal quotations and citations omitted).).[5]

---

[5] Moreover, the NFLPA has not exhausted its CBA remedies. If the NFLPA believes that the Commissioner has violated the Constitution and Bylaws or other NFL Rules by imposing discipline on Mr. Fujita, its remedy is to file a grievance with a Non-Injury Grievance Arbitrator, not to complain to this Court. (*See* CBA Art. 43, § 1.)

V.   **The Only Remedy that the Court Could Grant Plaintiffs Would Be Vacatur and Remand to the Commissioner for Another Appeal Hearing.**

Under the LMRA, "if … 'the arbitrator's award may be properly vacated, the appropriate remedy is to remand the case for further arbitration.'" *Int'l Chem. Workers Union v. Columbian Chems. Co.*, 331 F.3d 491, 496 n.1 (5th Cir. 2003) (quoting *Garvey*, 532 U.S. at 512). Hence, even if this Court were to vacate the forthcoming appeal decision, there would be no basis for this Court to select or require an arbitrator other than the Commissioner or a hearing officer that the Commissioner designates, as those are the only persons whom the parties agreed in the CBA could address conduct detrimental suspensions.

We understand *why* the NFLPA would seek from this Court an order requiring "neutral" review of Commissioner discipline: It bargained at length for such a process in the negotiations that led to the most recent CBA. But the Union did not secure that result. Instead, as Mr. Vilma recognizes, in the CBA, "the NFLPA accepted a certain amount of partiality when it agreed to allow [the Commissioner or his designee] to preside over conduct detrimental matters." (Vilma Mem. at 19.) The NFLPA may not now ask this Court to rewrite the bargain the parties struck. *See, e.g.*, *Japan Sun Oil Co. v. The M/V Maasdijk*, 864 F. Supp. 561, 568 (E.D. La. 1994) ("[T]he district court is limited to enforcing arbitration agreements according to their terms."); 21 Williston on Contracts § 57:68 (4th ed. & supp. 2012) ("[T]he rule that an arbitrator's powers are derived from the contract applies with respect to the selection of an arbitrator.").

None of the cases on which Plaintiffs rely supports the argument that this Court can, by appointing an arbitrator of the Court's choosing, vitiate the parties' agreement in the CBA that conduct detrimental appeals will be heard by the Commissioner or his appointed designee. None involves a CBA that expressly designates the person who is to preside over the arbitration.

This CBA—and this situation—therefore is fundamentally different from *Deaton Truck Line, Inc. v. Local Union 612*, 314 F.2d 418 (5th Cir. 1962), in which the CBA provided for arbitration before "an arbiter to be agreed upon by the parties." Granting a motion to compel arbitration, the district court noted that if the parties could not agree on an arbiter, the court would appoint one. *See id.* at 422–23. In affirming that aspect (recognizing that the district court had not actually appointed an arbiter), the Fifth Circuit observed that "[i]t is important for labor peace that the processes of arbitration should not be permitted to fail." *Id.* at 423. Thus, *Deaton* indicates that the goal of preserving labor peace by requiring arbitration of grievances may permit a court to appoint an arbiter when a party frustrates that goal by refusing to agree to an arbitrator, thereby preventing arbitration from happening. *Deaton* and the other "judicial inventiveness" cases the NFLPA cites have nothing to do with this case, because the parties *already agreed* in the CBA that the Commissioner or his designee shall hear conduct detrimental appeals.

Finally, we respectfully add that the Court may not, as Plaintiffs request, appoint Magistrate Judge Knowles to resolve the discipline appeals. "The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed." *United Steelworkers*, 363 U.S. at 582. That is particularly true when the issue is whether the players have engaged in conduct detrimental to the integrity of, or public confidence in, the game of professional football and, if so, the appropriate level of discipline. Those are questions that only the Commissioner or someone he designates based on knowledge, experience, and familiarity with the sport, can answer. If the parties "had wanted [this] dispute … resolved by an Article III judge … [they] would not have inserted an arbitration clause [calling for resolution by the Commissioner or his appointed designee] in the contract." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 679 (7th Cir. 1983).

## CONCLUSION

For the foregoing reasons, as well as those set forth in support of the NFL's Motion To Dismiss and in Opposition to the NFLPA's Application To Vacate (Doc. Nos. 64-1, 84, and 97), the Court should deny the Motions To Vacate and should dismiss these actions.

Respectfully submitted,

/s/H.S. Bartlett, III

| | |
|---|---|
| **GREGG H. LEVY** | **GLADSTONE N. JONES, III (#22221)** |
| **BENJAMIN C. BLOCK** | **LYNN E. SWANSON (#22650)** |
| **COVINGTON & BURLING LLP** | **HARVEY S. BARTLETT, III (#26795)** |
| 1201 Pennsylvania Ave., NW | **CATHERINE E. LASKY (#28652)** |
| Washington, DC 20004-2401 | **JONES, SWANSON, HUDDELL** |
| Telephone: (202) 662-5292 | **& GARRISON L.L.C.** |
| Telecopier: (202) 778-5292 | 601 Poydras Street, Suite 2655 |
| *Pro Hac Vice* | New Orleans, LA 70130 |
| | Telephone: (504) 523-2500 |
| | Telecopier: (504) 523-2508 |

**Counsel for the NFL and NFL Management Council**

## CERTIFICATE OF SERVICE

I hereby certify that, on October 17, 2012, prior to 12:00 pm, a copy of the foregoing Opposition was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

/s/ H.S. Bartlett, III